**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| PROFECTUS TECHNOLOGY LLC | § | |
| | § | |
| v. | § | Case No. 6:11-cv-474 |
| | § | (Consolidated—Lead Case) |
| HUAWEI TECHNOLOGIES | § | |
| CO., LTD., et al. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

# TABLE OF CONTENTS

I.   BACKGROUND .......................................................................................................... 3

II.  CLAIM CONSTRUCTION PRINCIPLES ................................................................ 3

III. CONSTRUCTION OF AGREED TERMS ................................................................. 6

IV.  CONSTRUCTION OF DISPUTED TERMS ............................................................. 6

    A.   MOUNTABLE ............................................................................................................ 6

    B.   PICTURE FRAME ..................................................................................................... 9

    C.   ACTIVATING THE DISPLAY SCREEN ................................................................. 12

    D.   CHANGING AN IMAGE DISPLAYED/CHANGING AN IMAGE OF THE DISPLAY SCREEN .............. 15

    E.   ADAPTED TO DIGITALLY DISPLAY AT LEAST ONE STILL IMAGE/ADAPTED TO DIGITALLY DISPLAY STILL IMAGES THEREON ................................................................. 17

    F.   AUTOMATICALLY ................................................................................................. 20

    G.   DISPLAY SCREEN ................................................................................................... 22

    H.   STILL IMAGE .......................................................................................................... 23

V.   CONCLUSION .......................................................................................................... 24

APPENDIX A ...................................................................................................................... 25

# I.    BACKGROUND

Plaintiff filed this action alleging infringement of U.S. Patent No. 6,975,308 (the '308 Patent). The '308 Patent issued on December 13, 2005. Titled "Digital Picture Display Frame," the patent relates to a provisional application filed on April 30, 1999.

On January 8, 2013, the Court entered a Provisional Opinion and Order providing the Court's constructions. The Court now enters this memorandum opinion and order setting forth the reasoning behind the Court's constructions.

# II.    CLAIM CONSTRUCTION PRINCIPLES

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

The claims of a patent define the scope of the invention. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). They provide the "metes and bounds" of the patentee's right to exclude. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). Accordingly, claim construction begins with and "remain[s] centered on the claim language itself." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).

Claim terms are normally given their "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Generally, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id* at 1313.

The best guide for defining a disputed term is a patent's intrinsic evidence. *Teleflex*, 299 F.3d at 1325. Intrinsic evidence includes the patent's specification and the prosecution history. *Id.*

The claims are part of the specification. *Markman*, 52 F.3d at 979. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314; *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation."). "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.

In addition to the claims, the specification's written description is an important consideration during the claim construction process. *See Vitronics*, 90 F.3d at 1582. The written description provides further context for claim terms and may reflect a patentee's intent to limit the scope of the claims. *See Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Grp., Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics*, 90 F.3d at 1583).

But care must be taken to avoid unnecessarily reading limitations from the specification into the claims. *Teleflex*, 299 F.3d at 1326; *see also Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983) ("That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims."). "[P]articular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water*, 381 F.3d at 1117; *see also Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

The prosecution history is also part of the intrinsic evidence. *Phillips*, 415 F.3d at 1317. It "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* "As in the case of the specification, a patent applicant may define a term in prosecuting a patent." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Statements made during the prosecution of the patent may limit the scope of the claims. *Teleflex*, 299 F.3d at 1326; *see Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (explaining that the doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution").

Finally, the Court may rely on extrinsic evidence to aid with understanding the meaning of claim terms. *Markman*, 52 F.3d at 981. Extrinsic evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 980. Extrinsic evidence is generally less useful or reliable, *Phillips*, 415 F.3d at 1317, and it should not be relied on when it contradicts the intrinsic evidence, *Markman*, 52 F.3d at 981.

## III.    CONSTRUCTION OF AGREED TERMS

The parties have agreed[1] to the construction of the following terms:

| Claim Term/Phrase/Clause: Claim No(s). | Agreed Definition |
|---|---|
| **portable memory device**<br>Claims 5, 31 | external storage media |
| **stand alone**<br>Claims 1, 2, 22, 29, 31 | independently satisfying each of the claimed features |

In view of the parties' agreements on the proper construction of these terms, the Court adopts the parties' agreed constructions.

## IV.    CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of eight terms or phrases in the patent in suit. Having considered the parties' briefing and their arguments during the claim construction hearing, the Court construes the disputed terms as outlined below.

### A.    *mountable*

Claims 1, 6, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| capable of being mounted | having a support for affixing on a wall or setting on a desk or table top |

---

[1] The parties agreed to one of these constructions based on the Court's proposals the day of the claim construction hearing.

This term appears in each of the independent claims as a modifier for the words "picture frame" and "display." The parties' dispute as to this term focuses on whether the mountable limitation must be accomplished with some feature intrinsic to the picture frame or whether this limitation can be met by modifying the picture frame or using a completely extrinsic mounting apparatus. For the reasons discussed below, the Court adopts the following construction: "having a feature for mounting."

### 1. The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a **mountable** picture frame adapted to digitally display at least one still image thereon;
>> the picture frame being a stand alone unit including:
>>> a display screen for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

Relying on a dictionary definition of the suffix "-able," Plaintiff argues that "mountable" simply means "capable of being mounted." Defendants argue that Plaintiff's construction would render this limitation meaningless. To make their point, Defendants provide examples of objects that have been mounted, but that would not fall within the plain and ordinary meaning of "mountable": a wine bottle, a basketball, and even a car. Furthermore, Defendants argue that

Plaintiff's broad construction conflicts with a position taken by the patentee in distinguishing the Suso prior art reference before the U.S. Patent and Trademark Office (PTO). Plaintiff responds that Defendants' construction improperly imports two limitations not supported by the claim language: (1) that the picture frame include a "support," a term that Plaintiff notes is never mentioned in the specification, and (2) that the picture frame be mountable to a wall or desktop, which Plaintiff claims is drawn from a preferred embodiment and should not be incorporated into the claim limitations. Finally, Plaintiff claims that the doctrine of claim differentiation precludes the Court from construing "mountable" to include a wall or desk limitation, as dependent Claim 6 includes that additional limitation.

It is undisputed that the mounting feature is not just a preferred embodiment; it is a part of the invention. Yet, Plaintiff's overly broad construction would render meaningless the term "mountable," which is used in every independent claim in the patent. The Court must give each term meaning. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim.").

Although the Court adopts Defendants' position that "mountable" requires more than simply rendering the frame capable of being mounted, the Court does not incorporate all of the additional limitations proposed by Defendants. Specifically, the Court does not agree with Defendant's proposed requirement that the picture frame must include a "support" to satisfy the mountable limitation. This position is not supported by the record. Similarly, the Court does not

incorporate into the construction of "mountable" the requirement that the device be mountable only to a wall or tabletop.[2] (Because the Court does not incorporate the wall or tabletop mountable limitation, Plaintiff's claim differentiation argument is moot.)

Finally, in the Court's Provisional Claim Construction Order, the Court construed the term "mountable" to mean "having a feature *designed for* mounting" (emphasis added). In order to alleviate any ambiguity created by the requirement that the feature must be "designed for" mounting, the Court eliminates that requirement. But the Court's construction remains that the picture frame or display must have some intrinsic mounting feature—not just a feature that could potentially render the frame or display *capable of being mounted*. Yet, the Court does not go so far as to require that the mounting feature include all components needed to mount the frame or display. For example, even the wall-mountable preferred embodiment would require use of some additional component (such as nails) to secure the frame to a wall. The '308 Patent at 5:44–47.

Having considered the record and the parties' arguments and for the reasons discussed above, the Court construes the disputed term **"mountable"** to mean **"having a feature for mounting."**

**B.** *picture frame*

Claims 1, 6, 7, 8, 22, 29

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a unit for displaying digital still images that is suitable for replacing a conventional picture frame | a structure that, when conventionally used, holds a tangible picture for display |

---

[2] The Court notes that during the claim construction hearing, Defendants did not oppose the Court's proposal to drop the "support" or wall/tabletop mountable requirements in the construction of "mountable."

Plaintiff contends that the claimed "picture frame" includes any device that can be used in place of a conventional frame to display digital images. Defendants counter that Plaintiff's construction is too broad and instead propose that a "picture frame" is a conventional picture frame that is adapted to display digital pictures. For the reasons discussed below, the Court adopts the following construction: "a unit used to replace a conventional picture frame."

### 1. The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a mountable **picture frame** adapted to digitally display at least one still image thereon;
>> the **picture frame** being a stand alone unit including:
>>> a display screen for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

Plaintiff claims that the patentee included in the specification an express definition of "picture frame": "a picture display for displaying digital pictures includes a mountable picture frame adapted to digitally display at least one still image thereon. The picture frame is a stand-alone unit used to replace a conventional picture frame." Plaintiff further argues that throughout the specification and claims, "picture frame" is used to mean a digital device. *See, e.g.*, the '308 Patent at 7:65–67 (listing a display screen as a feature of a picture frame). Plaintiff claims this

further supports its position that the patentee acted as lexicographer in defining "picture frame."

Defendants responds that the very language pointed to by Plaintiff illustrates that a "picture frame" as used in the patent is not inherently digital. Defendants note that the patent claims and specification indicate that a picture frame is *adapted* to display digital photos. Defendants argue that Plaintiff's construction improperly incorporates the digital component, thus rendering superfluous the "adapted to" language.

Defendant also argues that Plaintiff distinguished the Gombrich reference before the PTO by claiming that it "is not a picture frame" and further noting that "the present invention provides a picture frame and not a video monitor" (Doc. No. 257-7 at 4). Defendant further claims that Plaintiff's proposed construction improperly injects subjective opinion of what would be *suitable*.

The Court agrees with Plaintiff that the patentee included an express definition of "picture frame" in the specification. The specification explicitly states that "[t]he picture frame is a stand-alone unit used to replace a conventional picture frame." The '308 Patent at 2:7–8. This language distinguishes a picture frame from its plain and ordinary meaning of a conventional picture frame. With this language in the specification, the patentee is clearly expressing an intent to broaden the scope of a "picture frame" as used in the '308 patent to include any device that can replace a conventional picture frame. *Phillips*, 415 F.3d at 1316. But this definition still imposes limitations such as the size of the unit (*see, e.g.*, Doc. No. 257-4 at 14).

Yet Plaintiff inexplicably strays from the express definition and includes a subjective term: "*suitable* for replacing a conventional picture frame." This subjective requirement is contrary to law. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir.

2005). Instead, the Court adopts the express definition in the specification.

The Court also finds no merit in Defendants' argument related to the Gombrich reference. As Plaintiff notes, the patentee distinguished Gombrich because it had to connect to a computer to receive video and thus was not a stand-alone device (Doc. No. 257-7 at 4–6). Furthermore, the applicant's statements that the Gombrich reference is distinct from the claimed invention because Gombrich is a video monitor and not a picture frame does not compel this Court to limit picture frame only to a conventional picture frame.

Having considered the record and the parties' arguments and for the reasons discussed above, the Court construes the disputed term **"picture frame"** to mean **"a unit used to replace a conventional picture frame."**

C.    *activating the display screen*

Claims 1, 22, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| making the display screen active or more active | powering on |

The parties dispute whether "activating the display screen" requires the device to go from a powered down to powered on state or, alternatively, whether the limitation requires only that the display screen becomes more active. For the reasons discussed below, the Court draws the line between the parties' positions and construes the term to mean "turning on the display screen."

### 1. The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still
> digital pictures, comprising:
>> a mountable picture frame adapted to digitally display at
>> least one still image thereon;
>> the picture frame being a stand alone unit including:
>>> a display screen for displaying the at least one still
>>> image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for
>>> downloading still images to the memory;
>>> and
>>> control circuitry coupled to the display screen for
>>> automatically **activating the display screen**
>>> in accordance with an event, wherein the
>>> event includes one of a change in light
>>> intensity, and a sound detected in proximity
>>> of the display.

(emphasis added).

### 2. Court's Construction

Plaintiff argues that it is offering the ordinary and customary meaning of the word "activating." To support its plain and ordinary meaning argument, Plaintiff looks elsewhere in the patent, to discussions of activating pixels. *See* '308 Patent at 7:25–29. Plaintiff also argues that Defendants' position is too narrow and would exclude a preferred embodiment: when the screen saver feature prevents "burn in" by colors or intensity of pixels. '308 Patent at 4:57–67. Finally, Plaintiff points to the dictionary definition of "activate": "to make active or more active."

Defendants refute that the specification's reference to activating or altering pixels supports Plaintiff's proposed construction. Defendants further argue that during prosecution, Plaintiff explicitly stated that activating meant "powering on." Finally, Defendant discounts Plaintiff's reliance on the extrinsic dictionary definition as inconsistent with the intrinsic

evidence.

Plaintiff's reliance on the discussions of pixels in the specification are misplaced. The discussion that pixels can be *altered* to prevent burn in has no bearing on the construction of "activating." '308 Patent at 4:57–67. Furthermore, the specification's discussion of activating pixels using transistors does not compel a construction that activating means something more than turning on, regardless of whether the object of the action is a pixel or an entire display screen.

But Defendant's proposed construction extends too far in the opposite direction, requiring that the display screen be completely powered down and then power on when activated. Both parties agree that "activating" encompasses going from a powered off to a powered on state, but Defendant's proposed construction imposes this as the only permissible construction. This is not supported by the record. Defendant cites an embodiment that represents its construction, '308 Patent at 5:25–30, but the Court cannot limit the scope of the term to this single embodiment. *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Furthermore, Defendants cite another embodiment in which a motion sensor has a switch that *turns on* a particular function—such as the display screen—when triggered. '308 Patent at 6:35–36. Turning on a particular function is broader than *powering on* the function.

Furthermore, Defendants' attempt to limit the construction based on the patentee's efforts to distinguish prior art is unavailing. The patentee distinguished the art for not *automatically* activating the display screen (Doc. No. 257-4 at 10). The patentee then listed a powering on sequence as one example of how the display screen might be activated (Doc. No. 257-4 at 11–

12). This permissive language does not limit the scope of the claim term. *See Omega Eng'g, Inc.*, 334 F.3d at 1325–26 (noting that "for prosecution disclaimer to attach . . . the alleged disavowing actions or statements made during prosecution be both clear and unmistakable").

The Court also finds unhelpful Plaintiff's circular dictionary definition: "to make active or more active." This definition is simply a recitation of the words the Court is seeking to define. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008) (noting that claim construction "usually requires use of words other than the words that are being defined").

The relevant discussions in the specification all reflect a feature that is being turned on (but not necessarily *powered* on). *See, e.g.*, '308 Patent at 4:57–67, 6:35–37, 7:25–29. Thus, in view of the intrinsic record, the Court construes the term **"activating the display screen"** to mean: **"turning on the display screen."**

> D.  *changing an image displayed/changing an image of the display screen*

Claims 22, 29

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| altering or replacing an image displayed | switching the still image on the display screen to a different still image |

The parties agree that "changing" means replacing. But Plaintiff proposes that changing also encompasses altering an image. Defendants disagree. For the reasons discussed below, the Court adopts Plaintiff's position and construes the term to mean "altering or replacing an image displayed."

> 1.  **The Claim Language**

Claim 29 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:

a mountable picture frame adapted to digitally display at
 least one still image thereon;
the picture frame being a stand alone unit including:
 a display screen for displaying the at least one still
  image stored in memory;
 the memory for storing the at least one still image;
 an interface coupled to the memory for
  downloading still images to the memory;
  and
 control circuitry coupled to the display screen for
 automatically **changing an image of the display
 screen** in accordance with an event, wherein the
 event includes one of a change in light intensity,
 and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

Plaintiff argues that the specification uses "change" to mean both altering, *see, e.g.*, '308 Patent at 5:7–13, and replacing. Defendants generally agree with Plaintiff's representation, but argues that use of the phrase "a change in" means "alter," while use of the term "change" means "replace."

Defendants further argue that the Court would promote ambiguity if it adopts two distinct meanings of "change." Defendants also claim that the patentee explicitly disclaimed "change" to mean "replace" while prosecuting the patent application before the PTO. Specifically, Defendants note that the patentee indicated that "an image may be switched" upon the triggering of a certain event, such as at a certain date or time (Doc. Nos. 257-17 at 7, 257-18 at 10).

Defendants' argument that "replace" and "alter" are inconsistent with one another is without merit. As Plaintiff notes, these constructions simply encompass the full scope of what it means to change something. And Plaintiff is entitled to the full scope of the claim terms. *See Throner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012); *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003). Furthermore,

Defendants have not demonstrated that the patentee's permissive example provided during the prosecution of the patent—i.e., "an image may be switched"—rises to the level of an explicit disclaimer. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 844 (Fed. Cir. 2010). Finally, as Defendants concede, Plaintiff's proposed construction is fully supported by the specification.

Accordingly, the Court adopts Plaintiff's proposed construction and construes the terms **"changing an image displayed"** and **"changing an image of the display screen"** to mean: **"altering or replacing an image displayed."**

> **E.** *adapted to digitally display at least one still image/adapted to digitally display still images thereon*
>
> Claims 1, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction needed.<br>Alternatively, if the Court determines that construction of this term is necessary, it should be construed as: "suited to digitally display at least one still image." | designed to display digital still images instead of use as a general purpose computer or cell phone |

The "adapted to digitally display" phrases are used to modify the terms "picture frame" and "display." The parties dispute (1) whether "adapted to" should be construed as "designed to," and (2) whether the Court should impose a negative limitation excluding computers and cell phones. For the reasons discussed below, the Court finds no construction is necessary for these terms.

> **1.** **The Claim Language**

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:

a mountable picture frame **adapted to digitally display at least one still image** thereon;

the picture frame being a stand alone unit including:

    a display screen for displaying the at least one still image stored in a memory;

    the memory for storing the at least one still image;

    an interface coupled to the memory for downloading still images to the memory; and

    control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

## 2.    Court's Construction

Plaintiff proposes plain and ordinary meaning of these terms, arguing against Defendants' use of "designed to" as too narrow. Plaintiff also argues that negative limitations are generally disfavored, absent an explicit disavowal. Plaintiff further claims that no such disavowal is found in the prosecution history.

Defendants point to language in the specification and prosecution history claiming it supports incorporating the purpose of the invention—that the invention is designed to display digital still images—as a limitation that the invention must be *designed* for that purpose. Defendants also point to the specification and prosecution history to support their proposed negative limitation that the adapted picture frame does not include a computer or cell phone

The Court finds no merit to Defendants' position that the construction of "adapted to" should include a limitation that the device was "designed to" function as a digital photo frame. Nothing cited by Defendants compels or even suggests this conclusion. *See* '308 Patent at 1, 42–44, 2:7–8, 3:48–53 and Doc. No. 257-7 at 5–6. Furthermore, "adapted to" is not ambiguous and Defendant has not shown that further construction is required. *See Phillips*, 415 F.3d at 1312

(noting that claim terms are normally given their "ordinary and customary meaning").

The Court further rejects Defendants' proposed negative limitation. Absent a specific disavowal, negative limitations are generally disfavored. *See Omega Eng'g*, 334 F.3d at 1322–23. Specifically, as to Defendants' proposal to exclude computers, Defendants look to the claims and portions of the specification where other functions are completed by a computer (i.e. transmitting data to the display). *See, e.g.*, '308 Patent at 8:15–17. According to Defendants, this suggests that the invention is distinct from a computer. Defendants also note that the specification indicates that the functionality and storage capacity of a general purpose computer may not be suited for the limited purpose of the invention. '308 Patent at 22–28. Defendants similarly argue that this supports their proposed negative limitation that the invention cannot be a computer. Although Defendants point to several references to computers within the specification, none of these rise to the level of a clear disavowal. *See Omega Eng'g*, 334 F.3d at 1325.

As to cell phones, Defendants argue that the patentee explicitly distinguished the present invention from cell phones while prosecuting the patent application before the PTO. The patentee distinguished the Suso prior art on the basis that Suso was a cell phone, and thus "completely unsuitable" for purposes of the present invention (Doc. No. 257-4 at 13–14). Defendants argue that this amounts to an explicit disclaimer of all cell phones. Defendant claims this was a disavowal of all cell phones. The Court does not find that the patentee's discussion of distinguishing of Suso rises to the level of a clear disclaimer (Doc. No. 257-4 at 13–14). *See Omega Eng'g*, 334 F.3d at 1325.

Accordingly, the Court determines that no construction is necessary for the terms "adapted to digitally display at least one still image" and "adapted to digitally display still images thereon."

F.    *automatically*

Claim 1, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction needed.<br>Alternatively, if the Court determines that construction of this term is necessary, it should be construed as: "without further effort on the part of the user" | without user manipulation of the controls of the device |

The parties dispute what level of human interaction—if any—is permitted under the meaning of "automatically." For the reasons discussed below, the Court finds no construction is necessary for this term.

**1.    The Claim Language**

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a mountable picture frame adapted to digitally display at least one still image thereon;
>> the picture frame being a stand alone unit including:
>>> a display screen for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the display screen for **automatically** activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

Plaintiff proposes the plain and ordinary meaning of "automatically." Plaintiff challenges Defendants' construction as conflicting with at least three preferred embodiments. *See Globetrotter Software*, 362 F.3d at 1381.

In contrast, Defendant seeks to impose a dictionary definition of "automatically." Defendant also argues that the patentee added the "automatically" limitation during prosecution to overcome the Jacklin prior art reference (Doc. No. 257-4 at 11). In doing so, Plaintiff distinguished Jacklin as requiring manual operation of the setup menu and "some conscious effort to manipulate the controls of the device" (Doc. No. 257-4 at 11). Similarly, the patentee distinguished the Hsien prior art reference by noting that the claimed invention requires "no active intervention on the part of the user" (Doc. No. 257-4 at 12).

The Court finds that the plain and ordinary meaning controls. The broad disclaimers alleged by Defendant are based on manipulation of controls and have no bearing on whether human interaction (such as motion) can be a triggering event. Thus, this prosecution history does not support Defendants' proposed construction. Furthermore, Defendants' reliance on extrinsic evidence is misplaced in the absence of an ambiguity. *See Vitronics*, 90 F.3d at 1583 ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence.").

Accordingly, the Court determines that no construction is necessary for the term "automatically."

**G.** *display screen*

Claims 1, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction needed. | viewable surface for presenting digital still images large enough to allow viewers to see the digital still images from a distance of more than a foot or two |

The parties dispute whether to incorporate a limitation related to the size of the screen into the construction of "display screen." Plaintiff argues that this concern is already addressed in the construction of "picture frame." Defendant counters that Plaintiff disclaimed all small-screen devices when distinguishing the Suso reference. Defendant notes that Plaintiff specifically limited the invention to screens "large enough to allow viewers to see displayed photographs from a distance of more than a foot or two" (Doc. No. 257-4 at 14).

**1.      The Claim Language**

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
>> a mountable picture frame adapted to digitally display at least one still image thereon;
>> the picture frame being a stand alone unit including:
>>> a **display screen** for displaying the at least one still image stored in a memory;
>>> the memory for storing the at least one still image;
>>> an interface coupled to the memory for downloading still images to the memory; and
>>> control circuitry coupled to the **display screen** for automatically activating the **display screen** in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

As argued by Plaintiff, the Court previously incorporated the issue of screen size into its construction of "picture frame." The more specific statement from the prosecution history related to viewing pictures from "more than a foot or two" is not a "clear and unmistakable" surrender of claim scope and thus is not a prosecution disclaimer. *See Omega Eng'g*, 334 F.3d at 1326. Accordingly, the Court determines that no construction is necessary for the term "display screen." *See id.* at 1323 ("We indulge a heavy presumption that claim terms carry their full and customary meaning." (quotations omitted)).

### H. *still image*

Claims 1, 2, 22, 29, 31

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction needed. Alternatively, if the Court determines that construction of this term is necessary, it should be construed as: "non-moving image." | non-moving graphic picture i.e., not video |

Defendants claim that their proposed constructed is directed to Plaintiff proffering a single frame of video as a "still image." Plaintiff advocates for the plain and ordinary meaning.

### 1. The Claim Language

Claim 1 of the '308 Patent recites the following:

> A stand alone and mountable picture display for displaying still digital pictures, comprising:
> > a mountable picture frame adapted to digitally display at least one **still image** thereon;
> > the picture frame being a stand alone unit including:
> > > a display screen for displaying the at least one **still image** stored in a memory;
> > > the memory for storing the at least one **still image**;
> > > an interface coupled to the memory for

downloading **still images** to the memory; and

control circuitry coupled to the display screen for automatically activating the display screen in accordance with an event, wherein the event includes one of a change in light intensity, and a sound detected in proximity of the display.

(emphasis added).

### 2. Court's Construction

The Court finds that the plain and ordinary meaning of "still image" does not encompass video, even when considered as a string of single frames. With this in mind, the Court determines that no construction is necessary for the term "still image." *See Omega Eng'g*, 334 F.3d at 1323 ("We indulge a heavy presumption that claim terms carry their full and customary meaning." (citations omitted)).

## V. CONCLUSION

For the forgoing reasons, the Court adopts the constructions as set forth above, and as listed in the attached chart. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**It is SO ORDERED.**

**SIGNED this 16th day of April, 2014.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

| Claim Term | Claims | Court's Construction |
|---|---|---|
| **portable memory device** | 5, 31 | Claims 5, 31 |
| **stand alone** | 1, 2, 22, 29, 31 | independently satisfying each of the claimed features |
| **mountable** | 1, 6, 22, 29, 31 | having a feature for mounting |
| **picture frame** | 1, 6, 7, 8, 22, 29 | a unit used to replace a conventional picture frame |
| **activating the display screen** | 1, 22, 31 | turning on the display screen |
| **changing an image displayed/changing an image of the display screen** | 22, 29 | altering or replacing an image displayed |
| **adapted to digitally display at least one still image/adapted to digitally display still images thereon** | 1, 22, 29, 31 | No construction necessary |
| **automatically** | 1, 22, 29, 31 | No construction necessary |
| **display screen** | 1, 22, 29, 31 | No construction necessary |
| **still image** | 1, 2, 22, 29, 31 | No construction necessary |